IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESTDALE CONSTRUCTION, LTD,<br>    Plaintiff,<br>        v.<br><br>LIBERTY STATE FINANCIAL<br>HOLDINGS CORPORATION, LIBERTY<br>STATE BENEFITS OF<br>PENNSYLVANIA, INC.,<br>MICHAEL ERHARD, et al.,<br>    Defendants. | CIVIL NO. 09-2973(NLH)(AMD)<br><br>**OPINION** |

**Appearances:**

MIGUEL A. POZO
CINDY TZVI-SONENBLICK
MICHAEL T.G. LONG
LOWENSTEIN SANDLER PC
65 LIVINGSTON AVENUE
ROSELAND, NJ 07068

    On behalf of plaintiff

ROBERT W. CUSICK
ROBERT W. CUSICK, ESQUIRE, LLC
1763 ROUTE 70
2ND FLOOR
CHERRY HILL, NJ 08003

    On behalf of defendants

**HILLMAN**, District Judge

     This matter has come before the Court on plaintiff's motion for partial summary judgment on its breach of contract claim against defendants Liberty State Benefits of Pennsylvania, Inc. ("Liberty Benefits") and Liberty State Financial Holdings

Corporation ("Liberty Financial").[1]  For the reasons expressed below, and at oral argument held on March 17, 2010, plaintiff's motion will be granted as to Liberty Benefits and denied as to Liberty Financial.

## BACKGROUND

Plaintiff, Westdale Construction Company, Ltd., claims that in November 2008, defendant Michael Erhard, president of defendant Liberty Benefits, contacted Cliff Oliver by telephone to request a loan in the amount of $2,306,120.00 in order to purchase the beneficial interests in certain irrevocable life insurance trusts ("ILLTs").  After their conversation, Erhard drafted a "Loan Request Letter," dated November 18, 2008, which provided,

> We herewith request a loan in the amount of $2,306,120.00 to purchase the beneficial interests of the ILITs who own the below mentioned in force life insurance policies. The 3 ILITs will be used as collateral for the term of the loan.  It is agreed to pay you an interest of 5% per month for the duration of the loan.  The repayment of the loan will be no later than March 2009, and in fact probably will be paid off earlier entirely . . . in a lump sum as listed below. . . .

---

[1] Plaintiff has also asserted several additional claims for other relief, such as civil conspiracy to defraud plaintiff, unjust enrichment and breach of the covenant of good faith and fair dealing.  Plaintiff has not moved for judgment on those other claims.  Plaintiff has also filed a motion for a prejudgment attachment, which the Court has granted, and which has been the subject of several hearings.  The issues concerning the writ of attachment, as well as the independent, court-appointed trustee's investigation into the irrevocable life insurance trusts at issue, are ongoing.  This Opinion deals solely with plaintiff's motion for partial summary judgment on its breach of contract claim against the two Liberty entities.

>     The total Purchase Price/Loan amount for all policies is
>     $2,306,120.00
>     5% interest per months $115,306.00
>     Loan Repayment amount per 12/08 $2,421,426.00
>     Loan Repayment amount per 01/09 $2,536,732.00
>     Loan Repayment amount per 02/09 $2,652,038.00
>     Loan Repayment amount per 03/09 $2,767,344.00

(Pl. Ex. A. to Oliver Cert., Docket no. 19-1.)

   Oliver presented the letter to Ron Kimel, President of Westdale, to determine Westdale's interest in funding the requested loan.  Westdale complied with Liberty Benefits' request and agreed to issue a loan in the amount of $2,306,120.00, to be repaid at 5% interest per month, no later than March 2009.  On November 20, 2008, Liberty Benefits assigned its beneficial interests in the three ILITs to Westdale.

   On February 13, 2009, Erhard wrote a letter to Westdale to inform it of Liberty Benefits' efforts to repay the loan.  Erhard explained Liberty Benefits' financial situation, and stated, "We thus expect to have these funds available by the end of this month but worst case not later than the end of March 09.  The first use of these funds will be the repayment of the loan inclusive [of] the agreed interest.  You can rest assure[d] of that.  We appreciate your patience and trust."  (Id., Ex. C.)  Westdale, via Cliff Oliver, received another letter from Erhard, dated February 17, 2009, which was essentially identical to the letter Erhard sent four days previously, and reiterated that "we still feel that we will be able to pay off the loan well in advance of that [March

2009] date."  (Id., Ex. D.)

Despite these assurances, by the end of March 2009, Liberty Benefits had failed to repay Westdale's loan.  In June 2009, Westdale filed suit against Liberty Benefits, Liberty State Financial, which owns 100% of the stock of Liberty State Benefits, and Ehard, asserting several causes of action, including one for breach of contract.[2]  In September 2009, plaintiff filed the instant motion for partial summary judgment on its breach of contract claim.  As noted above, after several hearings concerning plaintiff's motion for prejudgment attachment, during the March 17, 2010 proceedings the Court granted plaintiff's motion with regard to Liberty Benefits, but denied its motion with regard to Liberty Financial.  This Opinion, as indicated by the Court at the hearing, supplements the Court's decision expressed on the record.

## DISCUSSION

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied

---

[2] Plaintiff does not advance a breach of contract claim against Michael Erhard.

that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

**C.   Analysis**

Plaintiff alleges that it entered into a contract with the Liberty entities and they breached the contract by failing to repay the loan with the agreed upon interest at the agreed upon time. Plaintiff argues that no issues of material fact remain as to its breach of contract claim against both entities, and therefore it is entitled to summary judgment on that claim.  Liberty Benefits does not deny that it made an offer to plaintiff, it accepted plaintiff's money, it agreed to pay 5% interest per month upon repayment no later than March 2009, it assigned the beneficial interests to the ILITs to plaintiff as collateral, it did not repay the loan by March 2009, and it still has not made any payments to plaintiff.  Liberty Benefits argues that summary judgment in plaintiff's favor is not appropriate at this time, however, because material dispute exists as to whether a contract even exists.  It further argues that disputed issues exist as to the terms of the contract, particularly as to whether there was a meeting of the minds regarding the applicable interest rate in the case of its default.

5

Similarly, Liberty Financial argues that summary judgment should not be entered against it as there are issues of material fact concerning whether it was a party to any agreement, and if it is determined that a valid contract exists, issues remain as to its liability for Liberty Benefits' breach of that contract.

Liberty Benefits' arguments are unavailing.  Simply stated, "a contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance."  Johnson & Johnson v. Charmley Drug Co., 95 A.2d 391, 397 (N.J. 1953); see also Corestar Intern. Pte. Ltd. v. LPB Communications, Inc., 513 F. Supp. 2d 107, 116 (D.N.J. 2007) ("At the most basic level, a contract consists of an offer, acceptance and consideration."). To prove a breach of contract, a plaintiff must show that a valid agreement existed, defendant materially breached the terms of the agreement, and plaintiff suffered damages as a result of the breach.  Sery v. Federal Business Centers, Inc., 616 F. Supp.2d 496, 507 (D.N.J. 2008) (discussing New Jersey law).

In this case, a valid contract exists between plaintiff and Liberty Benefits, Liberty Benefits breached the contract, and plaintiff has suffered damages.  Despite Liberty Benefits' position that "admitting to borrowing money, and owing repayment, is not the same as admitting to breaching a valid and binding contract," (Def. Opp. at 8), that conduct is the very definition of a contract. Orally through Cliff Oliver, and then in writing directly to

6

plaintiff, Liberty Benefits made an offer to plaintiff--it asked for a $2.3 million loan, and in consideration of that loan, it offered to pay 5% interest per month until it repaid the loan within five months, while the beneficial interests of the ILITs would be assigned to plaintiff to serve as collateral. Orally, plaintiff accepted those terms, and made money wire transfers at Liberty Benefits' direction. Liberty Benefits then assigned the beneficial interest in the ILITs to plaintiff. Also, prior to March 2009, Liberty Benefits sent plaintiff two "lulling" letters, which twice acknowledged its obligation to repay plaintiff for its loan. The fact that the parties did not execute a single document titled "Contract" does not mean that no contract exists. See Kroblin Refrigerator Xpress, Inc. v. Pitterich, 805 F.2d 96, 107-08 (3d Cir. 1986) (holding that the law does not require the execution of a single document in order for there to be a contractual relationship between two parties). In this case, a contract clearly exists between plaintiff and Liberty Benefits.

Even though Liberty Benefits admits to agreeing to--and failing to--repay plaintiff by March 2009 at 5% interest per month, it contests that the 5% per month interest rate should apply to every month it has failed to repay the loan since March 2009. It argues that such a rate was not contemplated by it, and the imposition of that default rate amounts to usury.

Liberty Benefits' argument on this issue is unavailing as

7

well. First, in a loan between corporations in excess of $50,000, the parties can contract for any rate of interest, and the parties cannot assert usury as a defense. See N.J.S.A. 31:1-1(e), -6. Second, despite the contract's silence as to a default interest rate, Liberty Benefits has not provided any evidence that the default rate would be different from the term rate. Indeed, the interest rate on a defaulted loan is typically higher than the contract rate, and that is evidenced by New Jersey's usury statute, which "'does not apply to interest on defaulted obligations.'" Pegasus Blue Star Fund, LLC v. Canton Productions, Inc., 2009 WL 3246616, *3 (D.N.J. Oct. 6, 2009) (quoting Loigman v. Keim, 250 N.J. Super. 434, 437, 594 A.2d 1364 (Law Div. 1991) and citing Stuchin v. Kasirer, 237 N.J. Super. 604, 612, 568 A.2d 907 (App. Div. 1990) ("[I]t is not illegal to provide for an interest rate higher than that permitted by the usury laws if the rate is only applied after default.")). It is simply untenable to allow Liberty Benefits to avoid liability on the main obligation of its contract based on an ambiguity (interest rate after default) in a document it drafted that will likely resolve itself by it being obligated to pay less than others similarly situated.

The Court finds that there is no disputed fact that (1) plaintiff and Liberty Benefits entered into a valid contract, with mutual consideration, which contained all the essential terms of a loan agreement (amount; term, interest rate, purpose, and

collateral); (2) except for breach, the parties admit or do not contest that they acted in a manner consistent with that agreement thereby confirming its core terms; (3) Liberty Benefits breached the contract; and (4) plaintiff has suffered damages due to Liberty Benefits' breach in the amount of $2,306,120.00 plus interest at 5% per month from December 2008 through March 2010.  Accordingly, judgment on plaintiff's breach of contract claim against Liberty Benefits will be entered in plaintiff's favor.[3]

Conversely, with regard to Liberty Financial, summary judgment on plaintiff's breach of contract claim against it cannot be entered at this time because issues of material fact exist as to its liability under the contract.  First, disputed and material facts exist with regard to the Liberty Benefits' offer letter's reference to Liberty Financial's financial statements, as well as to Liberty Financial's "Resolution per 11/19/08."  Plaintiff argues that because it relied upon Liberty Financial's financial statements as inducement to enter into the loan agreement, Liberty Financial must be considered a party to the contract.  Liberty Financial disputes this characterization of its involvement.  Further, although the offer letter states that the financial documents are attached to the letter, neither party has provided

---

[3]In addition to this Opinion and accompanying Order, the Court will also enter a Judgment in the amount of $4,151,016.00, which is the sum of the loan principal amount of $2,306,120.00 and interest in the amount of $1,844,896.00.  At the next scheduled hearing, the Court will address the effect of the Judgment on the current writ of attachment.

9

the documents as part of the record. Because of these missing documents, and the lack of evidence in the record other than plaintiff's claims, this issue must be flushed out through discovery.

Similarly, with regard to Liberty Financial's "Resolution per 11/19/08," the offer letter states that it was executed by the president of Liberty Financial, "which owns Liberty State Benefits of Pennsylvania Inc." Like the financial documents, although the letter indicates that the resolution is attached, it is not part of the record. Thus, whether these documents, and reference to them in the offer letter, can serve to make Liberty Financial liable for a breach of contract cannot be determined at this time.

Second, material disputed facts exist with regard to Liberty Financial's involvement in the contract beyond the reference to its financials and resolution in the offer letter. Although Liberty Financial received $835,120.00 from plaintiff as a result of the contract, evidence in the current record shows that those funds were transferred out of Liberty Financial's escrow account in order to purportedly purchase the ILITs. Additionally, there is no evidence in the current record that Liberty Financial participated in the formation of the contract terms or otherwise communicated with plaintiff. As the Court indicated at the hearing on March 17, 2010, mere receipt of funds is insufficient at this stage to find that Liberty Financial was a party to the contract.

Finally, there is currently no evidence in the record concerning whether Liberty Financial, as Liberty Benefits' parent company, can be held liable for Liberty Benefits' breach.  A parent company is not normally liable for the contractual obligations of a subsidiary, even if that corporation is its wholly-owned subsidiary.  Liability can attach to the parent, however, under the "alter ego" theory.  See <u>State, Dept. of Environmental Protection v. Ventron Corp.</u>, 468 A.2d 150, 164 (N.J. 1983).  There is no evidence in the current record regarding Liberty Financial's corporate structure or whether Liberty Benefits can be considered its alter ego.  Accordingly, for all of these reasons, summary judgment as to plaintiff's breach of contract claim against Liberty Financial must be denied at this time.[4]

**CONCLUSION**

For the reasons expressed at oral argument and supplemented above, plaintiff's motion for partial summary judgment on its

---

[4] Nothing in the analysis denying Plaintiff's present motion for summary judgment on its breach of contract claim against Lincoln Financial precludes Plaintiff from seeking continuing interim relief against Lincoln Financial based upon a contract theory or other claim for relief.  Indeed, it now appears that there may be substantial proof that individuals acting on behalf of both Lincoln Benefits and Lincoln Financial engaged in an elaborate fraud against Plaintiff and others.  Therefore, the above discussion does not directly affect the current writ of attachment against Liberty Financial and does not prevent the Court from modifying its orders as circumstances dictate.  Moreover, because no formal discovery has been undertaken in this case, the denial of summary judgment on this claim is without prejudice to either party's right to file a subsequent summary judgment motion if or when appropriate.

breach of contract claim is granted as to Liberty Benefits, but denied as to Liberty Financial without prejudice.  An appropriate Order and Judgment will be entered.

Date: April 1, 2010                     s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.